1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

11 | BRADY KELLOGG, individually,

CASE NO. C12-5717 RJB

12 |                     Plaintiff,

13 |           v.

ORDER DENYING DEFENDANT
KITSAP COUNTY'S MOTION TO
DISMISS PURSUANT TO FED. R.
CIV. P 12(C)

14 | KITSAP COUNTY, a Municipal
Corporation organized under the laws of
15 | the State of Washington; Nurse KEVIN
DOE and JANE DOE, whose true names
16 | are not now known, husband and wife,
and the marital community comprised
17 | thereof; CONMED, Inc., a Foreign
Corporation doing business in Kitsap
18 | County Washington,

19 |                     Defendants.

20         This matter comes before the Court on Defendant Kitsap County's motion for dismissal

21 of all of Plaintiff's claims against the County which are premised upon the actions of the County

22 as opposed to the actions which are alleged to be imputed to the County through the actions of

23 Defendant ConMed, with whom the County contracted to provide medical services.  Dkt. 25 and

24

1   Dkt. 26-1.  The Court has considered the pleadings in support of and in opposition to the motion

2   and the record herein.

3   **INTRODUCTION AND BACKGROUND**

4   Plaintiff brings these claims against Kitsap County under 42 U.S.C. §1983, which

5   provides a cause of action for individuals deprived of a federal right by persons acting under

6   color of state law.  Plaintiff's complaint alleges that he received constitutionally inadequate

7   medical care while in the custody of the Kitsap County Correctional Facility.  Dkt. 1 pp. 7-8.

8   Plaintiff's Complaint contains, in part, the following allegations:

9   Kitsap County contracted with Defendant ConMed, Inc. to provide inmate healthcare

10   services.  Dkt. 1 p. 3.  ConMed was paid a flat rate of compensation, regardless of medical

11   needs of the inmate population.  *Id.*  Defendant ConMed hired and supervised Defendant nurse

12   Kevin Doe to act on its behalf in fulfilling its contract with Kitsap County.  *Id.*

13   Plaintiff was arrested by the Kitsap County Sheriff's Office on June 13, 2009, on a

14   misdemeanor charge and taken at 9:08 a.m. to the Kitsap County Jail for processing and to be

15   held until he could be brought before a court.  *Id.*  Plaintiff was a practicing alcoholic and had

16   consumed a considerable amount of alcohol the night before his arrest.  *Id.* p. 4.  During the

17   booking process Plaintiff under-reported his actual use of alcohol and the arresting officer was

18   unaware of Plaintiff's consumption or use of a potentially dangerous level of alcohol.  *Id.*

19   After his booking and while housed in the holding cell waiting to be released on bail,

20   Plaintiff became very thirsty and in need of water.  *Id.* p. 5.  Plaintiff asked for and was given a

21   glass of water by jail personnel.  Although the holding cell contained a drinking fountain,

22   Plaintiff felt he could not use the fountain as it only trickled water and would require Plaintiff to

23

24

1   place their lips on the fountain, exposing him infectious diseases.  *Id*.  When Plaintiff asked for

2   additional water, he was told by jail personnel to use the fountain.  *Id*.

3           Plaintiff rang a bell for help and after a long while, at 2:30 pm Defendant nurse Kevin

4   Doe and a guard arrived.  *Id*. p. 6.  Plaintiff informed the nurse that he had earlier under-

5   reported his alcohol dependency, and that he was an extreme alcoholic, and was afraid of what

6   might happen to him, as it had been so long since his last drink.  *Id*.  Defendant Doe noted that

7   Plaintiff was going to be bailed out by his mother and going straight to detox.  Defendant Doe

8   talked with Plaintiff about self-calming measures but provided no medications, nor instructions

9   for the guards that Plaintiff was to get free access to water.  *Id.*

10           At 3:45 p.m., as he was standing at the booking desk, Plaintiff had a seizure, causing

11   him to lose consciousness and fall to the concrete flooring, causing a pulverizing fracture of his

12   shoulder, with severe comminuted fracturing of his humeral head, and an almost complete

13   labral tear.  *Id*. p. 7.

14           Plaintiff alleges that the failure by Defendant nurse DOE to take timely, reasonable,

15   inexpensive and appropriate steps to ameliorate, mitigate and avoid the effects of alcohol

16   withdrawal for a known incarcerated  alcoholic, known to be in withdrawal distress, constitutes

17   deliberate indifference to Plaintiff's medical needs, and was a violation of the rights of the

18   Plaintiff.  *Id*. pp. 7-8.  The complaint asserts that the avoidance by Defendant Doe of incurring

19   medical expense by the Defendants, and the implementation of the practice to deny, delay and

20   interfere with provision of medical care, and of referring such care to other medical providers

21   was in furtherance of the policies and customs and usage of Defendants Kitsap County or

22   ConMed, or both.  *Id*. p. 8.

23

24

ORDER DENYING DEFENDANT KITSAP
COUNTY'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P 12(C)- 3

1

**JUDGMENT ON THE PLEADINGS STANDARD**

2      After the pleadings are closed, but within such time as not to delay the trial, any party

3  may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A judgment on the pleadings is

4  appropriate when, even if all the allegations in the complaint are true, the moving party is

5  entitled to judgment as a matter of law.  *Milne ex rel. Coyne v. Stephen Slesinger, Inc*., 430 F.3d

6  1036, 1042 (9th Cir .2005).

7      A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and a motion to

8  dismiss under Fed. R. Civ. P. 12(b)(6) are virtually interchangeable.  See *Dworkin v. Hustler*

9  *Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989); *Dworkin v.. Hustler Magazine, Inc*., 867

10  F.2d 1188, 1192 (9th Cir. 1989).   Under either provision, a court must determine whether the

11  facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy, and must

12  dismiss the claim or enter judgment on the pleadings if the complaint fails to state a legally

13  sufficient claim.  *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008).

14      As with Rule 12(b)(6) motions, review on a motion pursuant to Rule 12(c) is normally

15  limited to the complaint itself.  See *Lee v. City of L.A*., 250 F.3d 668, 688 (9th Cir. 2001).  The

16  Court should assume the allegations in the complaint are true and construe them in the light most

17  favorable to the plaintiff, and the movant must clearly establish that no material issue of fact

18  remains to be resolved.  *McGlinchey v. Shell Chem. Co*., 845 F.2d 802, 810 (9th Cir. 1988).

19      A complaint must include enough facts to state a claim for relief that is "plausible on its

20  face" and to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*,

21  550 U.S. 544, 555 (2007).  The complaint need not include detailed factual allegations, but it

22  must provide more than "a formulaic recitation of the elements of a cause of action."  *Id*.  A

23  claim is facially plausible when plaintiff has alleged enough factual content for the court to draw

24

1  a reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*,

2  556 U.S. 662, 677 (2009).

3  **DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

4        The Eighth Amendment's prohibition against cruel and unusual punishment/deliberate

5  indifference to serious medical needs does not directly apply to pretrial detainees, but only

6  applies after conviction and sentence.  See *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989).

7  However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of

8  any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted

9  prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  "Thus, while the eighth amendment

10 proscribes cruel and unusual punishment for convicted inmates, the due process clause of the

11 fourteenth amendment proscribes any punishment of pretrial detainees." *Redman v. County of*

12 *San Diego*, 942 F.2d 1435, 1441 n. 7 (9th Cir.1991).   In light of these Supreme Court's rulings,

13 the Ninth Circuit has concluded that the 'deliberate indifference' standard applies to claims that

14 correction facility officials failed to address the medical needs of pretrial detainees.  *Clouthier v.*

15 *County of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir. 2010); *Frost v. Agnos*, 152 F.3d

16 1124, 1128 (9th Cir. 1998).

17       For these reasons, the Court construes Plaintiff's deliberate indifference claims as

18 Fourteenth Amendment due process claims, subject to Eighth Amendment standards.  To state a

19 potentially cognizable claim pursuant to these standards, a plaintiff must satisfy a two-pronged

20 test. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  First, the plaintiff must show a serious

21 medical need by demonstrating that failure to treat a prisoner's condition could result in further

22 significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must

23 show the defendant's response to the need was deliberately indifferent.  This second prong is

24

1  satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

2  medical need and (b) harm caused by the indifference.  *Id*.

3       Plaintiff's allegation that he has been injured by the implementation of, and compliance

4  with, allegedly unconstitutional governmental policies, while broadly stated, may state

5  potentially cognizable claims against Kitsap County, provided Plaintiff can demonstrate a causal

6  connection between the challenged policy and the allegedly unconstitutional deprivation.

7                    **MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. § 1983**

8       Liability under 42 U.S.C. §1983 arises only upon a showing of personal participation by

9  the defendant.  There is no respondeat superior liability under Section 1983.  *Taylor v. List*, 880

10  F.2d 1040, 1045 (9th Cir. 1989); *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007); *Ortez v.*

11  *Washington Cnty., State of O*r., 88 F.3d 804, 809 (9th Cir. 1996).  Entities cannot be liable for

12  the conduct of their employees under the theory of respondeat superior.  *City of Canton, Ohio v.*

13  *Harris*, 489 U.S. 378, 385 (1989); *Monell v. New York City Dept. of Soc. Servs*., 436 U.S. 658,

14  694 (1978).  A local government entity may not be sued under Section 1983 for an injury

15  inflicted solely by its employees or agents.  *Monell*, 436 U.S. at 694.  Instead, it is when

16  "execution of a government's policy or custom ... inflicts the injury that the government as an

17  entity is responsible under § 1983."  *Id*.  Therefore, the first inquiry in a case alleging municipal

18  liability under § 1983 is whether there is a direct causal link between a municipal policy or

19  custom and the alleged constitutional deprivation.  *Harris*, 489 U.S. at 385.

20       A local government may also be liable for constitutional violations resulting from its

21  failure to supervise, monitor or train, but only where the inadequacy of said supervision,

22  monitoring or training amounts to deliberate indifference to the rights of the people with whom

23  the local government comes into contact.  See *City of Canton v. Harris*, 489 U.S. 378, 388

24

(1989); *Long v. County of Los Angeles*, 442 F.3d 1178, 1188-89 (9th Cir. 2006); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *Mackinney v. Nielsen,* 69 F.3d 1002, 1010 (9th Cir. 1995).  Only where a failure to supervise and train reflects a "deliberate or conscious choice" by a local government can the local government be liable under § 1983. *Harris*, 489 U.S. at 389.  Further, the plaintiff must demonstrate that the alleged deficiency in supervision and training actually caused the requisite indifference.  *Id.,* at 391.

Plaintiff's complaint alleges that a ConMed employee committed a constitutional violation, and the moving force behind the violation was a Kitsap County policy of providing medical care through a flat-rate contact with ConMed, manifesting deliberate indifference to Plaintiff's constitutional rights to necessary medical services to avoid significant injury.

Further, even if ConMed is considered the final policy-maker with respect to medical decisions at the jail, Kitsap County could still be liable for ConMed's decisions.  The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services. The underlying rationale is not based on respondent superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it.  *Ancata v. Prison Health Servs., Inc*., 769 F.2d 700, 705–06 (11th Cir. 1985).

## CONCLUSION

At this early stage of the proceedings, accepting Plaintiff's allegations as true, and giving the Plaintiff the benefit of all legitimate inferences from the complaint, Plaintiff sufficiently alleges a claim against Kitsap County of deliberate indifference to serious medical needs.

1    Therefore, it is hereby **ORDERED:**

2    Defendant Kitsap County's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. 25

3    & Dkt. 26-1) is **DENIED.**

4    Dated this 20th day of May, 2013.

5

6

7                    ROBERT J. BRYAN
                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANT KITSAP
COUNTY'S MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P 12(C)- 8