UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRADY KELLOGG, individually,<br><br>                Plaintiff,<br><br>    v.<br><br>KITSAP COUNTY, a Municipal Corporation organized under the laws of the State of Washington; Nurse KEVIN DOE and JANE DOE, whose true names are not now known, husband and wife, and the marital community comprised thereof; CONMED, Inc., a Foreign Corporation doing business in Kitsap County Washington,<br><br>                Defendants. | CASE NO. C12-5717 RJB<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment of Defendant Kitsap County (Dkt. 41) and motion for summary judgment of Defendants ConMed, Inc. and Kevin Goodwin (Dkt. 40). The Court has considered the pleadings in support of and in opposition to the motions and the record herein.

ORDER GRANTING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 1

## INTRODUCTION AND BACKGROUND

Plaintiff brings these claims against Kitsap County, ConMed, Inc, and Kevin Doe (subsequently identified as Kevin Goodwin) under 42 U.S.C. §1983, which provides a cause of action for individuals deprived of a federal right by persons acting under color of state law. Dkt. 1. Plaintiff's complaint alleges that he received constitutionally inadequate medical care while in the custody of the Kitsap County Correctional Facility. Dkt. 1 pp. 7-8. Plaintiff also alleges a cause of action for negligence against the Defendants. Dkt. 1 pp. 2-7.

Plaintiff was arrested by the Kitsap County Sheriff's Office on June 13, 2009, on a misdemeanor charge for domestic violence harassment and taken to the Kitsap County Jail for processing and to be held until he could be brought before a court. Dkt. 40-1. Plaintiff was a practicing alcoholic and had consumed a considerable amount of alcohol the night before his arrest. Dkt. 1 p. 4. During the booking process Plaintiff under-reported his actual use of alcohol and the arresting officer was unaware of Plaintiff's consumption or use of a potentially dangerous level of alcohol. Dkt. 1 p. 4; Dkt 42-7 p. 7. EMT Kevin Goodwin examined Plaintiff upon intake at 11:20 a.m., took vital signs, found no medical problem except that his blood pressure was elevated, and learned from Plaintiff that he was a social drinker. Dkt. 40-2. Kevin Goodman is a Washington State certified EMT, employed by ConMed, the medical provider for the Kitsap County Jail. Dkt. 42-8 pp. 5-7.

After his booking and while housed in the holding cell waiting to be released on bail, Plaintiff became very thirsty and in need of water. Dkt. 1 p. 5. Plaintiff asked for and was given a glass of water by jail personnel. Although the holding cell contained a drinking fountain, Plaintiff felt he could not use the fountain as it only trickled water and would require Plaintiff to place his lips on the fountain, exposing him infectious diseases. *Id*.

At approximately 2:30 pm, EMT Goodwin and a guard responded to a medical call from Plaintiff's cell. Dkt. 1 p. 6; Dkt. 42-7 p. 2. Plaintiff informed EMT Goodwin that he had earlier under-reported his alcohol dependency, and that he was an extreme alcoholic, and was uncertain of what might happen to him, as it had been so long since his last drink. Dkt. 42-8 pp. 15-19. EMT Goodwin was aware of a myriad of symptoms associated with withdrawal, including "sweating, DTs and everything all the way to seizures." Dkt, 42-8 pp, 17-18. EMT Goodwin did not observe that Plaintiff was sweating. Dkt. 42-8 p. 19. EMT Goodwin noted that Plaintiff was about to be bailed out by his mother and then was going straight to detox. Dkt. 1 p. 6; Dkt. 42-7 p. 2. Because Plaintiff had informed EMT Goodwin that he had his last drink earlier that morning, and it would be at least 24 to 48 hours from his last drink before there would be any concern of seizures, EMT Goodwin felt the detox facility would be able to address any withdrawal issues when he got there. Dkt. 42-8 p. 20. EMT Goodwin states that Plaintiff did not exhibit any signs or symptoms suggesting that he was having withdrawal from alcohol, minor or severe. Dkt. 40-2. Plaintiff did show signs of anxiety, and EMT Goodwin advised Plaintiff about self-calming measures, with good results. Dkt. 42-8 pp. 21-22.

At 3:45 p.m., as Plaintiff was standing at the booking desk signing his release paperwork, Plaintiff had a seizure, causing him to lose consciousness and fall to the concrete flooring, causing injury. Dkt. 40-1 pp. 20-21. Medical personal responded to Plaintiff's seizure. *Id.* Medical personal believed that Plaintiff had dislocated his shoulder as a result of the fall. Dkt. 40-1 p. 22. Because Plaintiff's mother was present awaiting his release, she agreed to transport Plaintiff to the hospital. *Id.*

EMT Kevin Goodwin was employed by ConMed, Inc. Dkt. 42-8 pp. 5-7. Kitsap County contracted with Defendant ConMed, Inc. to provide inmate healthcare services. Dkt. 1

p. 3. Plaintiff asserts that ConMed was paid a flat rate of compensation, regardless of medical needs of the inmate population, demonstrating a deliberate indifference to detainee's medical needs. Dkt. 1 p. 3. The complaint asserts that the avoidance by Goodman of incurring medical expense by ConMed, and the implementation of a practice to deny, delay, and interfere with provision of medical care, and of referring such care to other medical providers was in furtherance of the policies and customs and usage of Defendants Kitsap County or ConMed, or both. Dkt. 1 p. 8.

Plaintiff also alleges that the failure by EMT Goodwin to take timely, reasonable, inexpensive and appropriate steps to ameliorate, mitigate and avoid the effects of alcohol withdrawal for a known incarcerated alcoholic, known to be in withdrawal distress, constitutes deliberate indifference to Plaintiff's medical needs, and was a violation of the rights of the Plaintiff. Dkt. 1 pp. 7-8.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn there from, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of

proof, the moving party must make a showing that is sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* at 248. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980). The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Anderson*. at 252.

## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

The Eighth Amendment's prohibition against cruel and unusual punishment/deliberate indifference to serious medical needs does not directly apply to pretrial detainees, but only applies after conviction and sentence. See *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989). However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Thus, while the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees." *Redman v. County of*

*San Diego*, 942 F.2d 1435, 1441 n. 7 (9th Cir.1991). In light of these Supreme Court's rulings, the Ninth Circuit has concluded that the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir. 2010); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

For these reasons, the Court construes Plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards.

To set forth a constitutional claim under the Eighth Amendment predicated upon the failure to provide medical treatment, first the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, a plaintiff must show the defendant's response to the need was deliberately indifferent. *Lemire v. California Dept. of Corrections and Rehabilitation*, ___ F.3d ___, 2013 WL 4007558 (9th Cir. 2013). The "deliberate indifference" prong requires (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. *Jett*, 439 F.3d at 1096. The indifference to a prisoner's medical needs must be substantial. Mere indifference, negligence, or medical malpractice will not support this claim. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

ORDER GRANTING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 6

**Kitsap County**

Plaintiff claims a constitutional violation via deliberate indifference to his serious medical needs. Plaintiff must show that Plaintiff had an objectively serious medical need, that Defendant was subjectively aware of the serious medical need, and that Defendant failed to adequately respond. *Lemire v. California Dept. of Corrections and Rehabilitation*, ___ F.3d __, 2013 WL 4007558 (9th Cir. 2013). Plaintiff's allegation is that he has been injured by the implementation of, and compliance with, allegedly unconstitutional governmental policies. Plaintiff asserts that a ConMed employee, EMT Kevin Goodwin, committed a constitutional violation, and the moving force behind the violation was a Kitsap County policy of providing medical care through a flat-rate contact with ConMed, manifesting deliberate indifference to Plaintiff's constitutional rights to necessary medical services to avoid significant injury. Dkt. 1.

Plaintiff has failed to establish a genuine issue of material fact regarding the constitutionality of the County's medical care policies. Similarly, Plaintiff has failed to establish that the jail had a policy that evidenced its deliberate indifference to the Plaintiff's serious medical needs. Plaintiff argues that the County's flat rate contract with ConMed would encourage the provider to cut corners so as to increase their profit, and that, therefore, the County's contract with ConMed to provide jail medical services evidences the County's deliberate indifference to the Plaintiff's serious medical needs. Other than his argumentative assertion that flat-rate contracts inspire the withholding of necessary medical services, Plaintiff offers no evidence that ConMed, or its employee EMT Goodwin, denied the Plaintiff medical care in an effort to minimize costs. Nor does the Plaintiff offer any evidence in support of the contention that the County knew that their flat-rate contract would inspire inappropriate cost

cutting measures on the part of ConMed. Simply asserting that the County contracted for flat-rate medical services does not raise a material question of fact evidencing the County's deliberate indifference in providing medical services to inmates. There is no language in the contract that supports such an assertion. See Dkt. 42-1; Dkt. 42-2; Dkt. 42-3.

Additionally, there is no evidence to support the argument that the contract for medical services required a nurse, as opposed to an EMT, in the present situation. Nor is there any evidence of a causal connection between the injury and the fact that an EMT, rather than a nurse, attended to Plaintiff. There is no showing that the outcome would have differed had a nurse evaluated Plaintiff's condition. In fact, Plaintiff's own expert states that a nurse and an EMT receive the same level of training regarding the symptoms of alcohol withdrawal. See Dkt. 45 p. 9.

Plaintiff has failed to raise a genuine issue of material fact that Defendant Kitsap County was deliberately indifferent to Plaintiff's serious medical needs by entering into a flat rate contract with the medical services provider ConMed. Kitsap County is entitled to summary judgment.

**ConMed and Kevin Goodwin**

Plaintiff has also failed to raise a genuine issue of fact that ConMed or Kevin Goodwin acted with deliberate indifference to a substantial risk of harm to Plaintiff. A provider of prison medical services acts with deliberate indifference only if the provider knows of and disregards an excessive risk to inmate health and safety. *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002). Under this standard, the provider must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). If a provider

ORDER GRANTING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 8

1   should have been aware of the risk, but was not, then the provider has not violated the Eighth
2   Amendment, no matter how severe the risk.  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.
3   2004); *Gibson*, 290 F.3d at 1188.  Mere negligence in diagnosing or treating a medical condition,
4   without more, does not violate a prisoner's Eighth Amendment rights.  *Toguchi,* 391 F.3d at
5   1057 (9th Cir. 2004); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  A
6   difference of opinion regarding proper medical care between a provider and the inmate is not
7   deliberate indifference.  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012).  To establish
8   deliberate indifference, the detainee "must show that the course of treatment the doctors
9   chose was medically unacceptable under the circumstances" and that the care was done "in
10  conscious disregard of an excessive risk to [the prisoner's] health." *Snow*, 681 F.3d at 988;
11  *Jackson v. Mcintosh*, 90 F.3d 330, 332 (9th Cir. 1996).

12       EMT Goodwin treated Plaintiff based on his symptoms.  That there was some risk of
13  seizure with withdrawal or that he could hurt himself falling when he had a seizure, does not
14  convert the possibility of ordinary negligence into deliberate indifference.

15       Plaintiff has provided the expert opinion of Dr. Jennifer Sounders to establish that
16  Plaintiff's injury was proximately caused by a failure of EMT Goodwin to comply with the
17  applicable standard of care, and that this failure constituted "deliberate indifference." Dkt. 45.  It
18  is Dr. Sounders' opinion that EMT Goodwin's assessment/examination of Plaintiff in response to
19  the 2:30 call was below the standard of care and substantially increased the risk of injury.  *Id.*
20  Dr. Sounders' qualification to provide expert testimony as to the applicable standard of care is
21  challenged.  While she may be qualified to opine on standard of care issues, she is clearly not
22  qualified to render a legal opinion such as whether a defendant was deliberatively indifferent.
23  The resolution of Plaintiff's Eighth Amendment claim does not require a resolution of Dr.
24

Sounders' qualifications to render medical standard of care opinions. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The Plaintiff and Defendants differ on the proper course of assessing and treating Plaintiff's condition. A difference in opinion between Plaintiff and Defendants about the preferred course of medical treatment does not constitute an Eighth Amendment violation. To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051,1058 (9th Cir. 2004). In *Toguchi*, plaintiff's physician expert opined that the treating physician administered medications without assessing prisoner's actual medical condition and without regard to possible withdrawal systems. The Court in *Toguchi* stated that the expert's opinion was one of negligence as opposed to deliberate indifference: "a difference of opinion about course of medical treatment necessary to treat state prisoner's diabetes did not amount to deliberate indifference to serious medical needs of prisoner." *Id*. The Court stated that medical malpractice-negligence in diagnosing or treating a condition, or an inadvertent failure to provide adequate medical care-does not rise to the Eighth Amendment level. *Id.* at 1057.

Viewing the evidence in the light most favorable to the Plaintiff and drawing any necessary inferences in his favor, the Court finds that a reasonable jury could not find that Defendants were deliberately indifferent to Plaintiff's medical needs. The record reflects that Plaintiff received constitutionally adequate medical treatment in accordance with the professional opinion and judgment of EMT Goodwin and other prison medical personnel.

EMT Goodwin examined plaintiff upon intake at 11:20 a.m., took vital signs, found no medical problem except that his blood pressure was elevated, and learned from Plaintiff that he was a social drinker. Thereafter, at approximately 2:30 p.m. Plaintiff called the medical staff and admitted to EMT Goodwin that he was an alcoholic and that he had his last drink that morning prior to his arrest. EMT Goodwin noted that Plaintiff seemed to be suffering some anxiety, but did not observe any other withdrawal symptoms, such as sweating. EMT Goodwin advised Plaintiff of self-calming measures, with good results. Goodwin was aware that Plaintiff was about to be bailed out by his mother and was going straight to detox. Because it was Goodwin's training that it would be at least 24 to 48 hours from his last drink before there would be any concern of seizures, Goodman felt the detox facility would be able to address any withdrawal issues when he got there. Within an hour, when Plaintiff was signing his release papers, he suffered an apparent seizure and fell to the floor injuring his shoulder. His mother, who was present at the facility, agreed to transport Plaintiff to the hospital, where he was treated.

The conduct of EMT Goodwin and ConMed does not demonstrate a deliberate indifference to the serious medical needs of Plaintiff, but merely a difference of opinion in the assessment of the prisoner's actual medical condition. Plaintiff has failed to raise a genuine issue of fact that Defendants ConMed and EMT Goodwin violated Plaintiff's Eighth Amendment rights.

Defendants ConMed and Kevin Goodwin are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### NEGLIGENCE AND SUPPLEMENTAL JURISDICTION

Defendants also request summary judgment on Plaintiff's state law negligence claims.

A district court's exercise of supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim is a matter of discretion.  28 U.S.C. § 1367(a); *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 523 (9th Cir. 1989).  Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has dismissed all claims over which it has original jurisdiction, it may, in its discretion, dismiss without prejudice supplemental state law claims brought in the same action.  Although the court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, fairness, convenience, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988). See also *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*,  884 F.2d 504, 509 (9th Cir. 1989).  The dismissal of supplemental state law claims may be justified if the case is at an early stage. *Schneider v. TRW, Inc*., 938 F.2d 986, 993–94 (9th Cir.1991).  Having dismissed the Eighth Amendment claim at the summary judgment stage, the Court will exercise its discretion by declining supplemental jurisdiction over the remaining state law negligence claims.  These claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons the Defendants are entitled to summary judgment dismissing Plaintiff's 42 U.S.C. § 1983 claims for violation of the Eighth Amendment.  The Court declines to exercise supplemental jurisdiction over the negligence claims and they are subject to dismissal without prejudice.  Therefore, it is hereby **ORDERED:**

1. Defendant Kitsap County's Motion for Summary Judgment (Dkt. 41) is **GRANTED IN PART.**

1
2
    2. Defendants ConMed, Inc, and Kevin Goodwin's Motion for Summary Judgment (Dkt. 40) is **GRANTED IN PART.**

3
    3. Plaintiff's 42 U.S.C. § 1983 claims are **DISMISSED WITH PREJUDICE.**

4
5
    4. The Court declines to exercise supplemental jurisdiction over the state law negligence claims and they are **DISMISSED WITHOUT PREJUDICE.**

6
Dated this 22nd day of August, 2013.

7
8
9

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

ORDER GRANTING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 13